IN THE MATTER OF THE CUSTODY OF HARVIN AUSTIN SAULS, III.

(Filed 3 May, 1967.)

**1. Divorce and Alimony § 22;   Habeas Corpus § 3—**

The institution of an action for divorce in this State ousts the custody jurisdiction theretofore invoked by the filing of a writ of *habeas corpus* for the custody of the children as between the husband and wife, regardless of whether the writ of *habeas corpus* was entered under G.S. 17-39 or G.S. 17-39.1.

**2. Judgments § 19;   Courts § 2—**

The fact that a party does not appeal from a judgment does not preclude such party from thereafter attacking the judgment on the ground that the court was without jurisdiction to enter the judgment, since jurisdiction cannot be conferred upon a court by consent, waiver or estoppel.

APPEAL by respondent from *McLaughlin, J.,* 28 November 1966 Session of STANLY.

Proceeding instituted under G.S. 17-39 to determine the custody of a child.

These facts appear from the pleadings and orders entered in the cause: Harvin Austin Sauls, Jr. (petitioner), and Dorothy Wheeler Sauls (respondent) were married on 29 January 1949. One child, Harvin Austin Sauls, III (Harvin), was born to them on 15 September 1955. From 1962 until 1 September 1964, the parties lived in Albemarle, where petitioner is employed and still resides. On 1 September 1964, they separated and respondent moved to Wilson with the child.

On 7 September 1964, petitioner filed an application for a writ of *habeas corpus* under G.S. 17-39 to determine the custody of Harvin. The writ issued and the proceeding came on for hearing before McConnell, J., Resident Judge of the Twentieth Judicial District, who, after extensive investigation and two hearings, entered an order on 21 December 1964 in which he found each party to be of good character and a fit and suitable person to have the custody of Harvin. He awarded his custody to respondent from 25 December 1964 through 25 July 1965 and ordered petitioner to pay her $100.00 a month for his support. The cause was retained for further orders. On 13 January 1965, Judge McConnell amended the order to allow petitioner specified visitation privileges. Upon petitioner's application, Judge McConnell again heard the matter on 30 June 1965, when he entered an order reciting his decision to divide Harvin's custody equally between the parents and declared that "the time has now come for custody of said child to revert to the father." He then awarded custody to petitioner from 2 July 1965 through 1 January 1966, with the same visitation rights to the mother which the former

order had granted to the father. No further orders fixing custody have been entered in this proceeding.

On 20 July 1965, at petitioner's request, respondent quit her employment in Wilson and returned to him in Albemarle, where she remained in the home until 21 September 1965. Thereafter, she returned to Wilson, where she is now employed as a medical secretary. The parties' sharply conflicting contentions with reference to the cause of their second separation appear in the verified pleadings filed in the action for divorce *a mensa et thoro* which respondent instituted in the Superior Court of Wilson County in July 1966. In her divorce action, respondent asked for alimony *pendente lite* and the custody of Harvin. In his answer, petitioner denied her right to any relief. He also filed a motion requesting that the divorce action be removed to Stanly County for trial for the convenience of witnesses.

Respondent's motion for alimony, counsel fees, and custody came on to be heard before Fountain, J., on 27 August 1966, at which time (by consent) she was allowed alimony and counsel fees. Judge Fountain "being of the opinion that it would not be proper for this Court to consider the matter of custody" because of the *habeas corpus* proceeding pending in Stanly County, declined to consider respondent's motion for custody.

On 6 October 1966, respondent filed an unverified motion in the Superior Court of Stanly County and moved to dismiss the *habeas corpus* proceeding for that (1) since the entry of the last order the petitioner and respondent had resumed the marital relationship and (2) an action for divorce *a mensa et thoro* in which she sought custody of Harvin is now pending in Wilson County. This motion to dismiss was heard on 26 October 1966 by Olive, J., Judge Presiding, who held (1) that "there was insufficient evidence presented to support a finding that the parties had resumed the marital relationship subsequent to the institution of the *habeas corpus* proceeding" and (2) that the order of Fountain, J., in the Wilson County action, in which he declined to consider the matter of custody because of the pendency of the *habeas corpus* proceeding in Stanly County, should not be disturbed by the court. In his discretion, Judge Olive denied respondent's motion to dismiss the *habeas corpus* proceeding.

On 19 November 1966, respondent filed a motion in which she asserted that it was through no fault of hers that she was not present at the hearing before Judge Olive on October 26th and that no evidence was presented in her behalf. She moved that she be allowed to offer evidence of the resumption of marital relations and that her motion to dismiss be reconsidered on its merits. This motion was heard at the November 1966 Session by Judge McLaughlin, who found as

a fact that respondent's failure to attend the hearing of her motion to dismiss and to offer evidence in her behalf was due to no fault of hers but "was the result of oversight on the part of her attorney." He held (1) that the merits of respondent's motion to dismiss the *habeas corpus* proceeding "are found in the issue as to whether there had been a reconciliation and a resumption of the marital relations between the parties subsequent to the commencement of this action"; (2) that Judge Olive has already considered and ruled upon the merits of the motion; and that he, therefore, had no jurisdiction to receive further evidence and reconsider the issue. He denied the motion to reconsider and retained the proceeding for further orders with reference to the custody of the child. Respondent excepted and appealed.

*Robert L. Scott for Harvin Austin Sauls, Jr., petitioner appellee.*
*Lucas, Rand, Rose, Morris & Meyer; Coble, Tanner & Grigg; Ruff, Perry, Bond, Cobb & Wade for Dorothy Wheeler Sauls, respondent appellant.*

Sharp, J. The rights of the parties to this controversy have become embogged in a procedural quagmire. As a result, we have the anomalous situation in which petitioner, in his answer to the Wilson County divorce action, pleads respondent's departure from his home in Albemarle on 21 September 1965 as an abandonment which defeats her suit, while the judge presiding in Stanly County denies her motion to dismiss the *habeas corpus* proceeding pending there because no resumption of marital relations has been shown. It would seem that an unconditional, bona fide resumption of marital relations, if such has occurred, would have vacated any order of custody then in force. Certainly it would destroy the status which, in the beginning, gave the court jurisdiction to issue the writ under G.S. 17-39. See *Hester v. Hester*, 239 N.C. 97, 79 S.E. 2d 248. We need not, however, pick our way through the procedural quicksands to reach that problem because, *in limine*, we are here confronted by this question: Was the custody jurisdiction which the Superior Court of Stanly County had previously acquired under G.S. 17-39 ousted by the institution of the divorce action in the Superior Court of Wilson County? In pertinent part, G.S. 17-39 provides:

> "When a contest shall arise on a writ of *habeas corpus* between any husband or wife, who are living in a state of separation, without being divorced, in respect to the custody of their children, the court or judge, on the return of such writ, may award the charge or custody of the child or children so brought

before it either to the husband or to the wife, for such time, under such regulations and restrictions, and with such provisions and directions as will, in the opinion of such court or judge, best promote the interest and welfare of the children. At any time after the making of such orders the court or judge may, on good cause shown, annul, vary or modify the same. . . ."

G.S. 17-39.1, enacted on 7 May 1957, as Chapter 545 of the Session Laws of 1957, provides:

"In addition to the above mandatory section (G.S. 17-39) and other methods authorized by law for determining the custody of minor children, any superior court judge having authority to determine matters in chambers in the district may, in his discretion, issue a writ of *habeas corpus* requiring that the body of any minor child whose custody is in dispute be brought before him or any other qualified judge. Upon the return of said writ the judge may award the charge or custody of the child to such person, organization, agency or institution for such time, under such regulations and restrictions, and with such provisions and directions, as will, in the opinion of the judge, best promote the interest and welfare of said child. The cause may be retained for the purpose of varying, modifying or annulling any order for cause at any subsequent time."

Prior to the enactment of G.S. 17-39.1, the decisions of this Court made it quite clear that immediately upon the institution of an action for divorce, either absolute or *a mensa et thoro,* jurisdiction of the custody of the parties previously acquired under G.S. 17-39 was ousted and vested in the court in which the divorce action was pending. G.S. 50-13. The rule was succintly stated by Barnhill, J. (later C.J.), in *Phipps v. Vannoy,* 229 N.C. 629, 632, 50 S.E. 2d 906, 907-8:

"So soon as the 'state of separation' between husband and wife resolves itself into, brings about, or is followed by an action for divorce in which a complaint has been filed, the jurisdiction of the court acquired under a writ of *habeas corpus* as provided by G.S. 17-39 is ousted and authority to provide for the custody of the children of the marriage vests in the court in which the divorce proceeding is pending. *Robbins v. Robbins, ante,* 430; *In re Blake, supra; McEachern v. McEachern, supra; In re Albertson, supra; Tyner v. Tyner,* 206 N.C. 776, 175 S.E. 144; *Story v. Story,* 221 N.C. 114, 19 S.E. (2) 136. Jurisdiction

rests in this court so long as the action is pending and it is pending for this purpose until the death of one of the parties.

"When, however, the parents were divorced outside this State, either parent may have the question of custody as between them determined in a special proceeding in the Superior Court. G.S. 50-13."

*Accord, Swicegood v. Swicegood, post,* at 278, 154 S.E. 2d 324; *Weddington v. Weddington,* 243 N.C. 702, 92 S.E. 2d 71; 3 Lee, N.C. Family Law § 222 (3d Ed., 1963).

Did the enactment of G.S. 17-39.1 change this well established rule and authorize the judge, in his discretion, to use *habeas corpus* as an alternative or additional remedy to *all other* authorized methods for determining custody, *including actions for divorce?* See 36 N.C. L. Rev. 52, 53 (1957).

In *Cox v. Cox,* 246 N.C. 528, 530, 98 S.E. 2d 879, 882, decided June 28, 1957 — approximately two months after the passage of G.S. 17-39.1 —, this Court said:

"When a divorce action is instituted, jurisdiction over the custody of the children born of the marriage vests *exclusively* in the court before whom the divorce action is pending and becomes a concomitant part of the subject matter of the court's jurisdiction in the divorce action. G.S. 50-13." (Emphasis added.)

In *Cleeland v. Cleeland,* 249 N.C. 16, 18, 105 S.E. 2d 114, 116, petitioner and respondent had been divorced in Virginia. Respondent, a resident of North Carolina, had custody of the children of the marriage. Petitioner, a resident of California, came to North Carolina and filed a petition for *habeas corpus* to obtain their custody. It was held that *habeas corpus* was an available remedy, and this statement appears in the opinion:

"Prior to 1957 *habeas corpus* could not be used to determine the right to the custody of children whose parents had been divorced, *In re McCormick,* 240 N.C. 468, 82 S.E. 2d 406; but by legislative act, c. 545, S. L. 1957, G.S. 17-39.1, the marital status of parents is not now a factor in determining the procedure to obtain custody of a child."

In *In re Herring,* 268 N.C. 434, 435, 150 S.E. 2d 775, 777, a case in which grandmothers were contending for the custody of their orphan grandchild, it is said: "The statute quoted above (G.S. 17-39.1) was enacted for the purpose of giving Judges of the Su-

perior Courts authority to hear and determine the custody of infants in all cases and without regard to previous proceedings."

Other cases in which G.S. 17-39.1 has provided the remedy to determine custody are: *In re Craigo,* 266 N.C. 92, 145 S.E. 2d 376 (custody of the children of contending parents divorced outside of North Carolina awarded to the maternal grandparents); *In re Skipper,* 261 N.C. 592, 135 S.E. 2d 671 (dispute over children in North Carolina between parents with divorce action pending in South Carolina); *Murphy v. Murphy,* 261 N.C. 95, 134 S.E. 2d 148 (Plaintiff-wife, living apart from defendant-husband under a deed of separation, sued for breach of the support agreement, custody, and support for the minor children. She stated no cause of action for divorce or alimony without divorce. Held, notwithstanding, she had stated a cause for breach of contract, and "a *habeas corpus* proceeding is also available to plaintiff. G.S. 17-39, G.S. 17-39.1." The court could "treat the complaint as a petition for writ of *habeas corpus* and proceed accordingly."); *Spitzer v. Lewark,* 259 N.C. 50, 129 S.E. 2d 620 (dispute between the parents of an infant and its paternal grandparents); *Lennon v. Lennon,* 252 N.C. 659, 114 S.E. 2d 571 (dispute between parents, one a resident of North Carolina, the other a nonresident divorced in Nevada).

We have found no case decided since the passage of G.S. 17-39.1 in which custody has been adjudicated in a *habeas corpus* proceeding *after* a divorce action has been instituted. The statements quoted above from *Cleeland* and from *In re Herring* were too broad and are hereby disapproved to the extent that they conflict with the rule that the institution of a divorce action ousts custody jurisdiction acquired under *habeas corpus*. To hold that with the enactment of G.S. 17-39.1 the legislature gave the judge presiding in the district the discretion to issue a writ of *habeas corpus* and to hear and determine the custody of all infants, without regard to previous decisions relating to their custody, would make a shambles of the statutes relating to custody. G.S. 7-103(c); G.S. 17-39; G.S. 17-39.1; G.S. 50-13; G.S. 50-16; G.S. 110-21(3). *Ipsissimis verbis,* some of those statutes are conflicting and inconsistent, and this Court, from time to time, has labored hard to reconcile or harmonize them. See *Blankenship v. Blankenship,* 256 N.C. 638, 124 S.E. 2d 857; *In re Cranford,* 231 N.C. 91, 56 S.E. 2d 35; *Phipps v. Vannoy, supra; In re Hamilton,* 182 N.C. 44, 108 S.E. 385. Yet one must read the cases to find that "exclusive original jurisdiction" does not mean what it says in G.S. 110-21.

The filing of an action for divorce, either absolute or *a mensa et thoro,* abrogates the necessity for *habeas corpus* to determine cus-

tody, for the court, in its equitable jurisdiction, has the inherent power to order the children of the parties brought before it. *Bunn v. Bunn,* 258 N.C. 445, 128 S.E. 2d 792. In divorce actions, the marital rights and obligations of both husband and wife, as well as the custody and support of the children of the marriage, are before the court in a *single* action. In a *habeas corpus* proceeding, the judge has jurisdiction of only one facet of the marital dispute, the custody and support of the children. When, as here, the right of the wife to support as well as to custody is at issue, justice to all parties — particularly the husband-father — is best served when one judge is able to see the controversy whole and to deal with all the financial problems which it creates.

In this case, alimony *pendente lite* has been awarded respondent in Wilson County. There is at present no support order in the *habeas corpus* proceeding in Stanly County. Conceding, *arguendo*, that custody could be awarded respondent in that proceeding, the judge there would then be called upon to fix the amount which petitioner should pay her for the child's support.

We are constrained to believe that the legislature did not intend *habeas corpus* under G.S. 17-39.1 to be used to determine custody disputes between parents divorced in North Carolina or between whom a divorce action is pending, but that this section provides an alternate remedy (to be used in the judge's discretion) in other cases. We hold, therefore, that the institution of a divorce action in this State ousts the custody jurisdiction previously obtained under a writ of *habeas corpus,* whether it be issued under G.S. 17-39 or G.S. 17-39.1. We note, however, that the general rule that exclusive custody jurisdiction is vested in the divorce court is subject to an exception: It was held in *Blankenship v. Blankenship, supra,* that a court before which an action for alimony without divorce (G.S. 50-16) was pending did not lose its custody jurisdiction to the court of another county in which an action for divorce had been subsequently filed. It was there pointed out that prior to the 1953 and 1955 amendments to G.S. 50-16, this Court had uniformly held that the court in which a divorce action was instituted obtained and retained exclusive jurisdiction over the custody of the children of the marriage as long as both parties lived and that, until the 1953 amendment to G.S. 50-16, custody of children could not be determined in an action for alimony without divorce. *Blankenship* holds that G.S. 50-16 created an additional method whereby all questions relating to custody and child support are brought into and determined in the suit for alimony, that is, in one action. This decision was bolstered by the 1955 amendment to the statute, which provided

that custody orders were authorized in actions under G.S. 50-16 "in the same manner as such orders are entered by the court in an action for divorce." It noted, however, that, if the divorce action had been first instituted, the court in which that action was pending would have acquired exclusive jurisdiction. For a comment on *Blankenship*, see 47 N.C.L. Rev. 464 (1963).

Respondent did not lose her right to challenge the custody jurisdiction of the Superior Court of Stanly County by failing to appeal from the order entered by Judge Olive on 26 October 1966. "Jurisdiction over the subject matter cannot be conferred upon a court by consent, waiver or estoppel, and therefore failure to demur or object to the jurisdiction is immaterial." 1 Strong, N. C. Index, Courts § 2 (1957); *Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673; *Hanson v. Yandle*, 235 N.C. 532, 70 S.E. 2d 565.

The order of Olive, J., dated 26 October 1966, and the order of McLaughlin, J., dated 29 December 1966, are reversed, and this cause is remanded to the Superior Court of Stanly County, which is directed to enter an order dismissing the *habeas corpus* proceeding from the docket.

Reversed.